Lomax v. Smyth & Co.

LOMAX ET AL. V. SMYTH & CO. ET AL.

| 50 | 223 |
| 88 | 117 |

| 50 | 223 |
| 92 | 564 |

| 50 | 223 |
| 106 | 520 |

| 50 | 223 |
| f110 | 420 |

| 50 | 223 |
| 123 | 197 |

1. **Notes and Bills: DEMAND AND NOTICE.** Where a draft is in the possession of the drawer until after maturity, demand and notice are waived; and the execution of a note for the amount of the draft, with full knowledge that demand has not been made and notice given, removes the effect of the laches, if any there be.

2. **Conveyance: CONSIDERATION : ESTOPPEL.** S., being indebted to plaintiff upon an obligation dated February 3, 1874, and which was past due on September 3, 1874, executed his note for four months at that time, dating it back to the time when the first obligation was executed. At the same time his wife executed deeds to certain real estate, lying in different counties, to secure the payment of the note; and plaintiff at the same time executed a defeasance, thereby agreeing, upon the payment of interest at the end of every six months, and the payment in full of principal and interest at twelve months from the time of the execution of the note, to reconvey : *Held*, that the conveyance by the wife to secure her husband's antecedent debt was sustained by a valid consideration; the acceptance thereof by the plaintiff, and the execution of the defeasance, estopping him from proceeding at once to collect the note. ADAMS, J., *dissenting*.

*Appeal from Humboldt District Court.*

FRIDAY, DECEMBER 13.

On the 3d day of February, 1874, George B. Smyth & Co., which the evidence shows is in fact George B. Smyth, drew and duly indorsed, in Keokuk, a draft payable to their own order on Cragin & Co., New York city, for twelve thousand dollars, due four months from date. On the same day the estate of B. F. Moody purchased this draft from George

B. Smyth & Co., paying therefor eleven thousand five hundred and ninety dollars. The draft was duly accepted by Cragin & Co., payable at Fourth National Bank, New York city. Before the draft matured Cragin & Co. became badly embarrassed, and informed Smyth that they could not meet the draft at maturity. Smyth stated this fact to Hosmer, one of the executors of the estate of B. F. Moody, and, as he was going east, desired the draft, that he might have Cragin & Co. waive protest. On the fifth day of June, the second day of grace, Smyth presented the draft to Cragin & Co., in New York city, and procured their signature to a waiver of protest, as follows: "For value received we hereby waive protest on the within." Upon his return from New York city Smyth returned the draft to Hosmer. He then commenced negotiations for the settlement of the claim, which culminated on the third day of September, 1874, by his executing a promissory note as follows:

"$12,000.                        KEOKUK, February 3, 1874.

"Four months after this date we promise to pay to the order of P. T. Lomax, A. Hosmer, and A. M. Moody, executors of B. F. Moody, deceased, twelve thousand dollars, with interest thereon at the rate of ten per cent per annum from maturity, and payable semi-annually from the 3d of September, 1874.

                              "GEORGE B. SMYTH & Co."

This note was antedated so as to bear the same date as the draft, and by its terms was due June 3, 1874, although not executed until the 3d of September. At the time of the execution of the note Smyth paid the interest thereon up to September 3, 1874. To secure this note George B. Smyth and his wife, Martha Smyth, executed to P. T. Lomax five separate deeds of land, situated in Humboldt, Emmett, Pocahontas, Plymouth and Sioux counties, amounting in all to about thirty-four hundred acres, the title to all of which was in Martha Smyth. About the same time Lomax executed a defeasance, the material portions of which are as follows:

"*Whereas*, the said Lomax now holds the promissory note of George B. Smyth & Co. for the sum of twelve thousand dollars, dated at Keokuk, February 3, 1874, payable four months after date to the order of A. Hosmer, the said Lomax, and A. M. Moody, executors of B. F. Moody, deceased, with interest thereon at the rate of ten per cent per annum from maturity, and payable semi-annually, and which note is now past due and unpaid; and, *whereas*, the said Martha M. Smyth, together with her husband, George B. Smyth, have this day conveyed to the said Lomax the following described real estate situated in the State of Iowa, viz.: * * * * * * * * * *

"Now, this agreement witnesseth, that upon the payment of the interest which has accrued upon the said note, at the rate of ten per cent per annum, to the 3d day of September, 1874, and the payment thereafter of the interest accruing, at the same rate, and at the end of every six months from the 3d of September, 1874, and the payment in full of said note, principal and interest, at twelve months from and after the 3d of September, 1874, by any of the parties liable thereon, or by the said Martha M. Smyth, or by any person or persons for them, and by the payment by the said Martha M. Smyth, or any person for her, of all taxes, dues and public charges, now due or to become due, in and upon the lands above described, then and thereafter the said Lomax covenants, promises and agrees, to and with the said Martha M. Smyth, to convey to her, by proper deed or deeds, the lands, and all the right, title or interest he may have acquired by virtue of the deeds of the said Martha M. Smyth and George B. Smyth, her husband, to him, the said Lomax, executed and delivered; and in event the said Martha M. Smyth shall desire, during the existence of this agreement, to sell and convey any of the land aforesaid, and to apply any of the proceeds of such sale to the payment, in whole or in part, of the indebtedness hereinbefore described, then the said Lomax, in consideration of the proceeds so to be applied,

does hereby further covenant, promise and agree, to and with the said Martha M. Smyth, for all such sums of money so realized and applied, that he will, by proper deed or deeds, convey all his right, title and interest in and to said lands, or any parts of the same, to the purchaser or purchasers thereof; and it is further agreed between the said P. Thornton Lomax and the said Martha M. Smyth, and it is the express condition, that in event the said Martha M. Smyth shall fail to pay or cause to be paid the annual taxes, dues and charges, now due or to become due, in and upon the lands above described, and in event that the said taxes, dues and charges are paid by the said Lomax, then that the sum or sums of money so paid by him to discharge and satisfy said taxes, dues and charges shall bear interest at the rate of ten per cent per annum from the date of such payment, and shall, both principal and interest, be secured to be paid to the said Lomax, from the proceeds of lands herein conveyed, in all respects as the principal debt herein first described and secured."

This action is brought to recover the amount of the note and certain taxes paid upon the lands described, and to foreclose the deeds in question as mortgages. The court found for plaintiffs upon the promissory note sued on, the sum of fifteen thousand nine hundred and twenty-nine dollars, and on account of taxes paid upon the lands the sum of one thousand six hundred and six dollars and eleven cents; and decreed that the lands described in the deeds be sold to satisfy said amounts, and that for any part of the said sum of one thousand six hundred and six dollars and eleven cents remaining unsatisfied by a sale of said lands a general execution be awarded against Martha M. Smyth. This decree is dated September 18, 1877. On the 4th of October, 1877, Martha M. Smyth perfected her appeal. On the 1st of December George B. Smyth and George B. Smyth & Co. served notice of appeal. The further material facts appear in the opinion.

*Howell & Anderson* and *J. F. Duncombe*, for appellants.

*Gillmore & Anderson* and *P. T. Lomax*, for appellees.

DAY, J.—I.   The plaintiffs retain the acceptance of Cragin & Co., and have refused to deliver it to the defendants. Upon the part of the defendants it is claimed that the note sued on was given in purchase of the draft in question, and that, because of the refusal of the plaintiffs to surrender the draft, there is a failure of consideration for the execution of the note.   Upon the other hand the plaintiffs insist that the note, and the conveyances securing it, were intended merely as collateral security for the draft; that it was never contemplated that the draft should be surrendered; that the security for the note is deemed inadequate for the amount due plaintiffs, and that they rightfully retain possession of the acceptance, hoping to be able to make something out of it if the security shall prove to be inadequate.   This branch of the case involves the determination of a question of fact.

We have carefully examined the testimony bearing upon this question, and we unite in holding that the preponderance of the evidence, taking into consideration all the surroundings and the conduct of the parties, sustains the claim of the plantiffs.   The space which would be occupied in our reports by a full review of the evidence bearing upon this branch of the case would not be compensated by the resulting benefits.

II.   It is insisted further that, as no demand of payment was made upon the acceptors of the draft, nor notice of non-payment given to George B. Smyth & Co., the drawees and indorsees of the draft, they were discharged from liability thereon, and the note is, therefore, without consideration and cannot be enforced.

1. NOTES and bills: demand and notice.

Upon the trial of the case the deposition of George B. Smyth was introduced, as follows:

"Previous to the maturity of the draft Cragin & Co. became badly embarrassed, and informed me that they could not

meet the draft at maturity. I saw Mr. Hosmer, stated that fact to him, and, as I was going east just previous to the maturity of the draft, asked him to let me take the draft with me, and have Cragin & Co. waive protest, and I would return it to him when I returned home, which he did. Cragin & Co. waived protest, and I returned it to him. Then I commenced negotiations for the settlement of the claim, stating to him that I was unable to pay it, and asking him to take a deed for land situated in Humboldt, Pocahontas, Emmett and Plymouth counties, stating that these lands were a part of the land grant to the Des Moines Valley Railroad, by a disinterested party valued at from five dollars and twenty cents to six and one-half dollars per acre. * * * Sometime after making this proposition, I think in September, 1874, Mr. Hosmer consented to it, and said, so far as I recollect, that Mr. Lomax attended to the legal part of the business of the Moody estate, and he would fix the matter up with me."

The evidence further shows that the note and deeds were executed pursuant to this proposition.

There are two reasons why the want of protest and notice cannot now avail:

1. It seems to have been the understanding of both Hosmer and Smyth that protest was necessary in order to bind the acceptors, Cragin & Co. Under this impression Smyth obtained possession of the draft, a short time before its maturity, for the purpose of procuring a waiver of protest from Cragin & Co. The draft matured on the 6th day of June. The waiver of protest is dated the 5th day of June. The writing, except the signature, is shown to be that of Smyth. He then had the draft in his possession in New York, on the day before it matured, and he handed it back to Hosmer when he returned to Keokuk. He had the draft in his possession when it matured, and thus deprived the holders of the power to present it for payment on the day when it matured. "Where an indorser obtains possession of the note before maturity, and withholds it until after that time, demand and

notice are waived." 1 Parsons on Notes and Bills, 584; *Havens v. Talbot*, 11 Ind., 323.

2. It very clearly appears that Smyth, with full knowledge that there had been no demand of payment, nor notice of non-payment, after the draft matured, entered into negotiations for the settlement of the claim, which finally resulted in the execution of the note sued on. It is very clear that this constitutes a waiver of notice.

In Parsons on Notes and Bills, p. 595, it is said: "The general principle seems now to be settled, in this country, at least, and by the earlier decisions in England, that, where no demand has been made or notice given, a promise to pay, after maturity, made with full knowledge of laches, is binding upon the party promising, and removes entirely the effect of any negligence in making the demand, or in giving the notice." See numerous authorities cited in note. See, also, to the same effect, *Creshire v. Taylor*, 29 Iowa, 492; *Hughes v. Bowen*, 15 Iowa, 446; *Allen v. Harrah*, 30 Iowa, 363. In addition to all this the affidavit of Smyth appears in the case, filed May 8, 1876, in which he says that "Cragin & Co. did not pay the bill at maturity, and, by consent of all parties, a waiver of protest was entered upon said bill." Under all the circumstances disclosed the want of protest cannot avail as a defense.

III. On the 9th day of December, 1876, the answer of defendant was filed, which, among other things, alleges that the draft was never protested as against the said Smyth. The replication to this answer, filed on the 7th day of March, 1877, is a mere denial. On the 17th day of March, 1877, and at the term at which the cause was tried, the plaintiffs filed an amended replication, admitting that said draft on Cragin & Co. was not protested, but averring that said Smyth & Co., with full knowledge of the same and the facts, waived protest, to-wit: demand and notice, and promised to pay said draft, and that said draft was in possession of Smyth & Co. at maturity. A motion for a continuance was made upon the

ground that this replication tendered a new issue, which the defendants were not prepared to meet. This motion was overruled. It is claimed that the defendants were thus compelled to go to trial upon an issue respecting which they had no opportunity to procure evidence, and that they have been greatly prejudiced by this action of the court. The deposition of George B. Smyth was taken and filed in the cause March 13th, before this amended replication was filed. In this deposition he distinctly admits all the facts alleged in this amendment. The amendment does no more than conform the issues to the facts already proved in the case. It is not apparent how the defendants could possibly have sustained any real prejudice from the ruling of the court.

IV. The main question in this case remains to be considered. It is this: Was there any consideration for the conveyance by Martha M. Smyth of her lands as security for her husband's antecedent debt? It is maintained by appellant that, "where one person owes another a sum of money, and afterward a third person is induced to secure or guarantee the payment of the debt, either by promising to pay it, or by pledging or mortgaging his property therefor, in order to support such subsequent undertaking of such third person there must be some further consideration shown than the original debt, for the consideration of the original debt will not attach to such subsequent contract." Appellee's counsel admit the correctness of this proposition of law. They contend, however, that there was a valid agreement to extend the time of payment of the debt owing by George B. Smyth, which would, as appellant admits, if established by the evidence, constitute a sufficient consideration to support the conveyances of Martha M. Smyth. Does the evidence, then, establish a valid and enforceable agreement for such extension?

The draft matured on the 6th day of June, 1874. It was long past due when the note and deeds were executed, on the 3d day of September, 1874. The note on that day was exe-

cuted, bearing date February 3, 1874, and payable four months after date, or three months before the day it was in fact executed. It was impossible that the note should be paid upon the day upon which, by its terms, it appeared to be due. The parties could not have intended such payment. The stipulation as to time of payment is entirely nugatory, because impossible of performance, and must be eliminated from the note. See *Hall v. Cazenove,* 4 East. R., 477. The note, then, in effect becomes one payable on demand at any time after its actual execution, September 3, 1874. The note, the deeds and the defeasance constitute parts of one transaction, and must be construed together as forming one contract. The plaintiff demanded security. The defendants proposed to give security. This was effected by the execution of absolute deeds and a defeasance. Having incurred the inconvenience and expense of executing the security, the defendants were entitled to whatever benefits resulted to them on account of the security. The defeasance recites: "Upon the payment of the interest which has accrued upon the said note, at the rate of ten per cent per annum, to the 3d day of September, 1874, and the payment thereafter of the interest accruing at the same rate, and at the end of every six months from the 3d of September, 1874, and the payment in full of said note, principal and interest, at twelve months from and after the 3d day of September, 1874, * * * then and thereafter the said Lomax agrees to convey," etc.

It is clear that this gives the defendants the privilege of paying the principal of said note within twelve months from the 3d day of September, 1874, or within one year from the time of its actual execution.

It is true Lomax does not expressly agree that he will not proceed to collect the note at once, but he does, in consideration of the deeds executed to him, agree in effect that payment of the note may be made at any time within twelve months from its execution. By the acceptance of these deeds and the execution of the defeasance Lomax estopped himself

and the plaintiffs from the right to proceed at once to the enforcement of the note; and if they had undertaken to enforce it they might have been prevented by injunction. There was, as we think, at the time the security was given, a valid agreement for the extension of the time of the payment of the debt.

V. It is claimed that, because the deeds are distinct, the court had no jurisdiction to foreclose except as to the lands situated in Humboldt county, where the action was commenced. The deeds, in connection with the defeasance, constitute one mortgage to secure the note sued on. The action to foreclose was properly brought in the county where some of the property was situated. Code, § 2578.

VI. The court decreed that for any balance of the judgment on account of the payment of taxes, which should remain unsatisfied after exhausting the lands decided as security, a general execution should issue against Martha M. Smyth. The defeasance, respecting the taxes upon the land, contains the following provision:

"And it is further agreed between the said P. Thornton Lomax and the said Martha M. Smyth, and it is the express condition, that in event the said Martha M. Smyth shall fail to pay or cause to be paid the annual taxes, dues and charges now due or to become due in and upon the lands above described, and in event that the said taxes, dues and charges are paid by the said Lomax, then that the sum or sums of money so paid by him to discharge and satisfy said taxes, dues and charges shall bear interest at the rate of ten per cent per annum from the date of such payment, and shall, both principal and interest, be secured to be paid to the said Lomax from the proceeds of lands herein conveyed, in all respects as the principal debt herein first described and secured".

It is urged by appellee that the taxes constituted a debt chargeable against Martha M. Smyth; that this recital in the defeasance operates as a mortgage upon the lands in ques-

tion to secure this debt; and, as there is no stipulation to the contrary, after exhausting the mortgaged property a general execution may issue. It is true that, as respects the county, Martha M. Smyth may be liable to answer for these taxes out of her general property; but, we think, she assumed to the plaintiffs no obligation to do so. The taxes upon her real estate constitute a lien paramount to any lien which the plaintiffs acquired. By pledging her lands for the payment of her husband's debts she assumed no personal obligation to keep the lands free from liens which might attach from delinquent taxes. The defeasance goes no further than to provide that taxes paid by Lomax should be secured from the proceeds of the lands, in all respects as the principal debt was secured. We think the court erred in awarding a general execution against Martha M. Smyth. In this respect the decree will be corrected in the court below or in this court, as plaintiffs may elect.

As thus modified the judgment is

AFFIRMED.

ADAMS, J., *dissenting.*—I think that there was no consideration for the deeds executed by Martha M. Smyth. The appellees contend that they were given in consideration of an agreement to extend George B. Smyth's note; but the note was executed at the same time that the deeds were made. It is not allowable to show that a note made by its own terms payable on demand, was, by a contemporaneous parol agreement, payable on time.

Furthermore, there is no evidence of such agreement. The opinion concedes that there was no expressed agreement, but it holds that the plaintiffs are estopped from saying that there was no agreement. The consideration, then, according to the opinion, is not the agreement but the estoppel.

Conceding, for the present, that an estoppel arising from the acceptance of a deed could become a consideration for the deed, I am unable to conclude that any estoppel arose. Where

a third person gives a mortgage to secure a demand note, and it is provided in the mortgage that it shall not be foreclosed within a specified time, the right to enforce the note immediately against the maker is perfectly consistent with the terms of the mortgage; and if the note and mortgage are executed at the same time, the note must be regarded as immediately enforceable.

It may be true that the maker of the note in this case procured Martha M. Smyth to give the security. The argument is that he must have expected some benefit from it. He doubtless hoped for more indulgence, but I am unwilling to hold that he became entitled to an extension in the absence of an agreement to that effect, and especially as he gave a demand note (or what is equivalent to it) which would exclude such agreement if made by parol and contemporaneously.

Besides, I do not think that the consideration of a deed can grow out of a deed. The theory of the opinion is that the deeds are void because the plaintiffs were estopped by receiving them. But they were not estopped if the deeds are void. It is necessary to assume their validity to create the estoppel.