[No. 3807.   Decided April 3, 1902.]

POINT ROBERTS FISHING COMPANY, *Appellant*, v. THE GEORGE AND BARKER COMPANY, *Respondent*.

FISHING — LOCATION OF TRAPS — ASCERTAINMENT OF END PASSAGE-
WAY — CONSTRUCTION OF STATUTE.

Laws 1899, p. 197, § 4, provides that, between all pound-net traps constructed in the waters of Puget Sound, there shall be an end passageway of at least 600 feet, and a lateral passageway of at least 2,400 feet, and that "for the purpose of determining end passageway a line shall be drawn parallel to the general direction of the shore line for one-half mile on either side of a proposed location, which parallel line ° shall intersect the outer end of any location theretofore made, . . . and a new location shall be driven at least six hundred feet distant at right angles from such base line." The defendant located its trap in the vicinity of plaintiff's trap by the following method: (1) It first ascertained the general course its trap would point when driven, and ascertained where a line would intersect the shore if projected along that course from the trap to such shore; (2) it ascertained the general direction of the shore for one-half mile on each side of the point of intersection; (3) it then drew a line parallel with the general direction of the shore, causing such line to intersect the outer end of the plaintiff's trap; (4) it then measured at a right angle from the last mentioned line to the nearest point of its trap location, being its inner end or end nearest plaintiff's trap. The end passageway, measured in this manner, was 620 feet. *Held*, that defendant's trap did not encroach upon the plaintiff's location, inasmuch as the method of measurement was correct under the statute.

STATUTES — MISCHIEVOUS RESULTS — DUTY OF COURTS.

The fact that the application of the provisions of a statute will lead to absurd, incongruous, or even mischievous results will not warrant the courts in refusing to give it effect, where it violates no principle of fundamental law.

Appeal from Superior Court, Whatcom County.—Hon. HIRAM E. HADLEY, Judge. Affirmed.

*Dorr & Hadley*, for appellant.

*Maxwell & Connor* and *Jesse A. Frye*, for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an action to enjoin the operation and maintenance of a pound-net fish trap. The principal question presented involves the construction of § 4 of the act of 1899 relating to food fishes. Session Laws 1899, p. 194. That section provides, among other things, that there shall be an end passage way of at least 600 feet, and a lateral passage way of at least 2,400 feet, between all pound-net traps constructed in the waters of Puget Sound; and further provides that, "for the purpose of determining end passage way a line shall be drawn parallel to the general direction of the shore line for one-half mile on either side of a proposed location, which parallel line shall intersect the outer end of any location theretofore made, and maintained as by law provided, and a new location shall be driven at least six hundred feet distant at right angles from such base line." From the record it appears that the appellant, plaintiff below, was, at the time of the commencement of this action, and for a long time prior thereto, the owner of and operating a pound-net trap in that part of the waters of Puget Sound known as "Boundary Bay," under licenses duly issued it from time to time by the fish commissioner of the state of Washington. It further appears that the respondent, after the construction of the appellant's trap, constructed in the same waters a pound-net trap in a northwesterly direction from the appellant's trap, and distant therefrom 620 feet, measured between the outer end of the latter trap and the inner end of the former, these points being the nearest points between the two traps. The respondent's trap was also located under a license issued by the fish commissioner, and is in all respects a lawful structure, if it is not so close to the appellant's trap as to be within

the distance prohibited by statute.  In locating its trap the respondent proceeded by the following method:  (1) It first ascertained the general course the trap would point when driven, and ascertained where a line would intersect the shore if projected along that course from the trap to such shore; (2) it ascertained the general direction of the shore for one-half mile on each side of the point of intersection; (3) it then drew a line parallel with the general direction of the shore, causing such line to intersect the outer end of the appellant's trap; (4) it then measured at a right angle from the last-mentioned line to the nearest point of its trap location, being its inner end or end nearest the appellant's trap.  The end passage way measured after this manner was found to be 610 feet.  The trial court ruled the method of measurement adopted to be correct under the statute, and therefore found that the respondent's trap did not encroach upon the appellant's location, and refused to enjoin the respondent from maintaining and operating it.

Counsel for the appellant, while they criticize and object to the construction put by the trial court upon the statute quoted, offer no other solution by which effect can be given to it.  On the contrary, they contend that no rule can be formulated out of the words used which will not lead to uncertain, ambiguous, or absurd results, when attempt is made to apply the rule to some one or more of the actual existing conditions; and, for these reasons, they contend that this part of the statute should be ignored, and the terms "end" and "lateral" passage ways be given their natural meaning; and that to give them their natural meaning is to hold that no new locator can locate a trap within a space surrounding an existing trap bounded by lines forming a parallelogram run 2,400 feet from each side, and 600 feet from each end, of the trap

as it is located and maintained; that is to say, if the existing trap was of the full length permitted by statute, *i. e.,* 2,500 feet, the parallelogram would include a space 3,700 feet in width and 4,800 feet in length. Without the use of maps and diagrams, which cannot be well reproduced here, it is difficult if not impossible to make clear the reasoning of counsel by which they seek to show the uncertainties and absurdities following an attempt to apply the rule of the statute to conditions as they actually exist. Some of the more startling results, however, may be stated. The record shows that the shore boundary of Boundary Bay is of a general, though not quite uniform, circular shape, making almost a semicircle. As the course of the "base line" mentioned in the statute is governed by the general course of the shore line for one-half mile on each side of the place at which the proposed new trap will point when constructed, it is evident that the locator of the new trap may, where the shore is of the shape this is shown to be, determine the direction of this base line by the point on the shore at which he points his trap, and has the choice of almost as many different directions as there are degrees in a semicircle. From these facts counsel demonstrate that while the trap is now only ten feet outside of the prohibited distance from the appellant's trap, as measured from the base line selected, it could be moved twenty feet nearer and still remain outside of that distance, by slightly changing the direction the trap points. Still another change in its direction, made by swinging the outer end of the trap partially around, using the inner end as a pivot and thus pointing the trap to a different part of the shore, would produce a base line which, when measured from according to the rule of the statute, would bring the

respondent's trap many feet within the prohibited distance, while its actual distance would remain practically unchanged. Still another change in its course, without making any change in its actual distance, would leave it partially within and partially without the prohibited distance.

It is upon these and similar incongruities that the argument is founded upon which we are asked to hold the statute inoperative. But courts are not at liberty to ignore statutes because it may find that their application leads to absurd, incongruous, or even mischievous results. The wisdom of a statute, its expediency and policy, are legislative, not judicial, questions. When, therefore, the meaning of a statute is clear, the courts can but give it effect, unless, of course, it violates some principle of fundamental law which the legislature is bound to observe. To do otherwise "is not to interpret law, but to make it." Turning to the statute itself, we think the trial court correctly interpreted it. In fact, we can hardly see how it could be given any other meaning. But it is said to give it this meaning is to make it contradictory of what is said before in the same' section; that the section first provides for an end passage way of 600 feet, and that an end passage means a passage way measured in a right line on the course the trap takes. Doubtless this would be true if nothing more had been said. But the same authority that had power to provide for an end passage way had power to define the meaning of the term. When, therefore, it provided for such passage way, and further provided that it should be determined by measurements made in a particular way, the end passage way is one found by measurements made in the prescribed way. The statute is a whole, and must be read as a whole. Generals are controlled by particulars;

and, when a general term is used in a statute which is afterwards defined, its meaning is as it is defined to be, even though the definition may vary or entirely change its natural meaning. To vary or change the natural meaning of a term is, in truth, the very purpose of definition when definition is resorted to by the law making body.

It is also objected that the trial court erred in finding the course of respondent's trap, and it is urged that its true course would sufficiently change the base line to bring the trap within the prohibited distance. To exemplify the evidence on this point would require the use of maps, which, as we have said, cannot well be reproduced. We have carefully examined it, however, and fail to find any error in the trial court's conclusions.

The judgment is affirmed.

REAVIS, C. J., and MOUNT, WHITE, ANDERS and DUNBAR, JJ., concur.

HADLEY, J., not sitting.