[No. 5220. Decided April 10, 1905.]

ALBION L. GILE, *Appellant,* v. S. J. BASEEL, *Respondent.*[1]

PLEADING — REPLY — DEPARTURE — FISH TRAPS — INJUNCTION AGAINST OPERATION—NUISANCE. In an action to enjoin the operation of a fish trap, a reply is inconsistent with the complaint and constitutes a departure, where the complaint alleges that the defendant's location is an unlawful encroachment because within the lateral passageway of plaintiff's traps, and the reply admits that the defendant's trap as remodeled was not within plaintiff's lateral passageway, but alleges that it is within the lateral passageway of a trap owned by one L, and was a public nuisance, especially injurious to plaintiff because it stopped and caught fish which otherwise his traps would catch.

FISHERIES—FISH TRAPS—LOCATION—CONFLICT—LATERAL PASSAGEWAY ON COLUMBIA RIVER. Under Laws 1899, p. 197, § 4, a fish trap in the waters of the Columbia river, is not within the lateral passageway of other traps already established, where it does not come within parallelograms extending thirty feet from each end and nine hundred feet from each side of the established traps, the thirty feet being measured at right angles to the shore and the nine hundred feet at right angles to the lead of the other traps.

Appeal from a judgment of the superior court for Pacific county, Rice, J., entered January 14, 1904, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to enjoin the use of a fish trap. Affirmed.

*Welsh Brothers* and *John H. & A. M. Smith,* for appellant.

*C. C. Dalton* and *W. B. Stratton,* for respondent.

FULLERTON, J.—The appellant owns and operates, and for a number of years has owned and operated, two pound net fish traps, located in the waters of the Columbia river,·

[1]Reported in 80 Pac. 437.

at a place therein known as Bakers Bay, under licenses issued to him from time to time by the fish commissioner of the state of Washington; the licenses for the year 1903 being numbered 685 and 687 respectively. The traps, measured on a straight line between their nearest points, are between 1,750 feet and 1,800 feet apart, and, while they have the same general course, they do not face each other, as the one highest up the river is further towards the middle of the stream from the nearest shore line than the other. In 1903 the respondent procured from the fish commissioner license number 222, and located a fishing site, and drove a pound net trap, between the appellant's traps on a course nearly parallel with the courses of such traps, and began fishing the same. The relative position of the three traps is roughly shown on the following diagram:

After the respondent began fishing his trap, the appellant instituted this action, alleging that the trap was within the lateral passageway of his traps, and asked that the respondent be enjoined from fishing it, and that the same be removed as an unlawful interference with his fishing rights. The respondent answered, admitting that, at the time of the commencement of the appellant's action, a

part of his trap was within the lateral passageway of one of
appellant's traps, but that since that time he had re-
modeled his trap so that then no part of it was within such
lateral passageway. The appellant, for reply, put in is-
sue the allegation that the respondent's trap as remodeled
was without the lateral passageway of his own traps, and
pleaded affirmatively that the respondent's trap as remodel-
ed was within the lateral passageway of a trap owned and
operated by one Loomis, and was thus a public nuisance,
and especially injurious to him because it stopped and
caught fish which his traps would otherwise catch. On mo-
tion of respondent, the affirmative matter of the reply was
stricken. The case was thereupon tried on the issues re-
maining; the court finding that some eighty-five feet of
the shore end of the respondent's trap was within the lat-
eral passageway of the appellant's lower trap, entered
a decree enjoining the respondent from fishing that portion
of the trap, but permitted him to maintain and operate
the remainder. This appeal is from that part of the judg-
ment adverse to the appellant's interests.

It is first assigned that the court erred in striking the
affirmative matter from the reply, but we think the court
was clearly right in so doing. Under the statute, it is
true, a plaintiff may set out in his reply new matter not
inconsistent with the complaint, constituting a defense to
new matter in the answer, but the reply here does not
fall within the rule. The gravamen of the complaint was
that the respondent had constructed his trap within the
lateral passageway of the appellant's traps. To an answer
thereto admitting that a part of the trap was originally
within the lateral passageway of one of the appellant's
traps, but that it had been changed so as to remove it there-
from, it is not a reply, consistent with the complaint, to al-
lege that the trap as changed constitutes a public nuisance

specially injurious to the appellant. If the reply be true, the change gave rise to a new cause of action in favor of the appellant against the respondent—a cause of action based on a different state of facts, and different principles of law, from that stated in the complaint. In other words, the reply not only attempted to enlarge the scope of the original complaint, but to change the nature of the action, and this we have held is not the office of a reply. *Distler v. Dabney,* 3 Wash. 200, 28 Pac. 335; *Bell v. Waudby,* 4 Wash. 743, 38 Pac. 18; *Osten v. Winehill,* 10 Wash. 333, 38 Pac. 1123. It may be that, had the appellant asked it, it would have been within the discretion of the trial court to have allowed the new matter to be incorporated in an amended or supplemental complaint, but this was the extent of the appellant's rights. To permit a new cause of action to be set up in a reply is to deny to the respondent the right to plead new matter in defense thereto; a right he has when sued for the maintenance of a nuisance.

The remaining assignment is that the court erred in determining what constituted the lateral passageway of the appellant's traps. The statute regulating fish traps and other fishing appliances (Laws 1899, p. 197, § 4) provides, among other things, that no lead of any pound net trap, used or operated in the Columbia river or its tributaries, shall exceed in length eight hundred feet, and that there shall be between all such traps an end passageway of at least thirty feet, and a lateral passageway of at least nine hundred feet. The end passageway in the waters of Puget Sound is fixed at six hundred feet. The statute, in the same section, also provides that,

". . . for the purpose of determining end passageway a line shall be drawn parallel to the general direction of the shore line for one-half mile on either side of a

proposed location, which parallel line shall intersect the outer end of any location theretofore made and maintained as by law provided, and a new location shall be driven at least six hundred feet distant at right angles from such base line."

The trial court held that under the statute, the lateral passageway of a pound net trap in the Columbia river must be measured on each side of the trap and at right angles thereto, and that the end passageway was to be found by measuring from the end of the trap along the line of its general course the distance prescribed by statute. In effect the court held that the statute provided for a space in the form of a parallelogram extending nine hundred feet on each side, and thirty feet on each end, of the trap, within which it is unlawful to construct another trap. This mode of measurement, it will be seen, fails to give effect to the statutory method of determining end passageways, and it is on this that the appellant bases his claim of error now under consideration. He argues that the end passageway necessarily determines the direction of the lateral passageway, and if the end passageway be established in this instance according to the statutory method, and the lateral passageway determined according to the course of the end passageway, it will be found that nearly, if not quite, all of the respondent's trap is within the lateral passageway of either one or the other of his traps.

But we think the appellant is wrong in assuming that the end passageway determines the course of the lateral passageway. The latter, as we understand it, is determined in the same way under all circumstances. It is measured at right angles to the course of the trap, and extends on each side of the trap either nine hundred feet or twenty-four hundred feet, owing to the place where it is located, and in all cases has a width equal to the width of a trap.

Its course or direction is not affected by the course or direction of the shore line towards which the trap points, but is controlled entirely by the course of the trap. It is the end passageway only that is affected by the shore line. The method of measuring an end passageway is described in *Point Roberts Fish Co. v. George & Barker Co.*, 28 Wash. 200, 68 Pac. 438, and it is plain from the rule as there explained that the statute does not affect the course of the end passageway but only its width. The end passageway is also a parallelogram, and lies along the side of the lateral passageway, having the same length, but a width varying from the statutory distance down to unity. In the Columbia river its width could never exceed thirty feet, and might be any less distance capable of admeasurement. When the court, therefore, allowed the appellant an end passageway of full thirty feet it is plain that it gave him a better judgment than he would have obtained had the statutory method of measuring such passageway been applied. And this being true, it is equally plain that the appellant was not prejudiced by the failure to apply the rule, and hence cannot complain of it on this appeal, as error to warrant reversal must be prejudical.

What we have said has been on the assumption that the rule for measuring end passageways applies to traps in the Columbia river, but we do not wish to be understood as so holding. It seems to us that there is much reason for holding it inapplicable, but, as it is unnecessary to decide the question, we prefer to leave it open for further investigation.

There being no error in the record prejudicial to the appellant, the judgment appealed from is affirmed.

MOUNT, C. J., HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.