[No. 5894. Decided January 5, 1906.]

## AUGUSTA JOHANSEN, *Appellant, v.* M. MULLIGAN, *Respondent.*[1]

FISH—FISH TRAPS—LOCATION—CONFLICT—LATERAL PASSAGEWAY—
STATUTORY REGULATION—MEASUREMENTS. Laws 1905, p. 254, § 1, pro-
viding that there shall be a lateral passageway of at least 900 feet
between fish traps in the Columbia river, requires that every trap
shall be so located, that there shall be no other trap within a distance
of 900 feet laterally on either side; and in determining this passage
way measurements must be made at right angles to the subsequent
location as well as to the prior traps.

SAME — SUBSEQUENT LOCATION — INJUNCTION AGAINST OPERATION.
Where a fish trap encroaches upon the passageway of prior locations,
and it is admitted that it catches fish that would otherwise be caught
by the prior traps, the prior locators are entitled to enjoin the main-
tenance of such trap.

Appeal from a judgment of the superior court for Pacific
county, Rice, J., entered September 27, 1905, upon over-
ruling a demurrer to defendant's answer, dismissing an action
to enjoin the operation of a fish trap. Reversed.

*McBride, Stratton & Dalton,* for appellant.

*B. F. Heuston* and *T. W. Hammond,* for respondent.

HADLEY, J.—This action involves a dispute concerning the
lateral passageway between fish trap locations. The traps
are located in the waters of Baker's bay, near the mouth of
the Columbia river. The plaintiff contends that the defend-
ant's trap encroaches upon her own location, and also upon
that of another. She has brought this action to enjoin de-
fendant from maintaining his trap at its present location.
The relative location of the traps mentioned in the complaint
may be illustrated by the following diagram:

1Reported in 83 Pac. 417.

The heavy dark line numbered 429 represents the plaintiff's trap; that one numbered 781 represents the defendant's location; and the one numbered 382 represents the location of one Soderland. Traps 429 and 382 were located prior to 781, the defendant's trap. The following appears in defendant's answer:

"Defendant, however, admits that if base lines were drawn at right angles with the general course of defendant's said trap No. 781, and intersecting the ends thereof, such base lines produced on the side towards plaintiff's trap No. 429 would cut said trap No. 429 at a distance of from 750 to 875 feet; in other words, this defendant has allowed an area in the form of a rectangle having a total length of 1,800 feet, being 900 feet on each side of the trap and the length of the trap plus thirty feet on each end in width, as incident to each of said traps 429 and 382, which were the traps first originally established, within which area defendant has not located or attempted to locate a new trap; but if the court should hold it to be the law that there must be allowed as incident to the trap last established another and further lateral passageway in the form of a rectangle 1,800 feet in length, being 900 feet on each side of the trap and the length of the new trap in width as incident to the new trap, within which area no part of any trap previously established might lawfully be, then defendant has not allowed such a lateral area for his trap No. 781 on the side thereof towards plaintiff's trap No. 429."

From the foregoing it will be seen that the only question raised is whether there is a lawful lateral passageway between defendant's trap 781 and plaintiff's trap 429. The trial court overruled a demurrer to defendant's answer, and the plaintiff having elected to stand upon her demurrer, and having refused to plead further, judgment was entered dismissing the action. The plaintiff has appealed.

It is provided in § 1, chap. 140, Laws 1905, p. 254, as follows:

"There shall be an end passageway of at least thirty feet, and a lateral passageway of at least nine hundred feet, between all pound nets, traps, weirs, fish wheels, or other fixed appliances hereafter constructed and placed within the waters of the Columbia river and its tributaries."

Such had also been the law since 1893. The contention in this case is as to the application that shall be made of that statute to the locations above described. It is the contention of respondent that the only lateral passageway to be considered is that incident to appellant's trap, designated in the space contained within the parallelogram formed by the two base lines drawn at right angles to the general direction of her trap 429 produced nine hundred feet on either side of the trap, and by the two lines connecting the same drawn parallel to the course of the trap nine hundred feet on either side thereof, as indicated in the diagram. The same contention is made as to location 382, with reference to which a similar parallelogram is drawn in the diagram. It is urged that neither 429 nor 382 can complain of the location of any subsequent trap which falls entirely without those parallelograms, as it will be seen is true of respondent's trap 781. It will be further observed, however, that a similar parallelogram drawn with reference to 781 includes portions of traps 429 and 382. Respondent argues that, although the parallelogram that would under ordinary circumstances be allowed to him by law cuts the other locations, yet that it is his misfortune due to his being the subsequent locator, and that the

other locators cannot complain since he is not in their terri-
tory. When the legislature said: "There shall be . . .
a lateral passageway of at least nine hundred feet between
all . . . traps . . .," what did it mean? Did it
mean that such passageway and measurement shall be con-
sidered only with reference to two traps whose general direc-
tions are parallel and whose lateral directions are therefore
both facing or in front of each other? Did it mean that
when a trap is so located that it nowhere crosses the plane
which extends laterally from another and prior trap and
within nine hundred feet of it, there is no lateral passage-
way between the two? Respondent's position is that it was
simply intended to accord to each trap, as incident to it, an
unobstructed parallelogram eighteen hundred feet in length,
extending nine hundred feet laterally on either side of it,
and that no further or other rights appertaining to lateral
passageways are to be considered.

This, he says, is true of the prior locator. But he con-
tends that the subsequent locator may locate anywhere with-
out the parallelogram of the former trap, and without ref-
erence to his lateral distance from such former trap. This,
we think, is clearly unsupported by the statute. The lateral
distance of nine hundred feet is an incident to the subse-
quently located trap, and must be observed. There is as
certainly a lateral direction incident to the new trap as there
is to the older one, and we think the statute requires, as
plainly as simple Anglo Saxon words can express it, that
every trap shall be so located that there shall be no other
trap within a distance of nine hundred feet laterally there-
from. There is a space *between* appellant's and respondent's
traps. That space constitutes a passageway between the two
traps. It is lateral to respondent's trap, and is therefore its
lateral passageway. All traps must have a lateral passage-
way of at least nine hundred feet, whereas respondent's has
less.

It is contended that, to determine the location of the lateral

passageway between two traps, measurements must be made at right angles from the prior trap only. There is nothing in the statute that warrants this contention. The statute in no way indicates that a subsequent locator shall not make similar measurements from his own trap in order to determine if another existing trap comes within a distance of nine hundred feet measured laterally from his own. Indeed, we think the manifest purpose of the statute cannot be met without his observance of such measurement, for it clearly means that there must be a distance of nine hundred feet *between* all traps laterally considered from either side. It is argued that the legislature of 1899 provided a method for measuring end passageways which required the measurements to be made with reference to prior existing traps. While that is true, yet it has never provided any such method for determining lateral passageways and distances.

Respondent cites the case of *Point Roberts Fish. Co. v. George & Barker Co.,* 28 Wash. 200, 68 Pac. 438. The case is cited as showing that the court determined the passageway by measurements with reference to the prior trap. The court simply attempted to follow the method designated in the statute, which was complex and difficult to apply. That method was repealed at the session of 1905. But, whatever methods the legislature may have adopted for determining end passageways, it has never designated any particular method for determining lateral distances and passageways. We see nothing in the above case, or in any others cited, to support respondent's view that he is not required to measure laterally from his own trap to determine if he is within nine hundred feet of another. Since less than that distance intervenes laterally between his and appellant's traps, both traps cannot lawfully be maintained. Respondent's trap being the newer one is therefore the unlawful one.

Respondent's answer admits that his trap has caught salmon that would otherwise, and but for the existence of his trap,

have been caught by the appellant's trap; and it is also admitted that such will continue to be the case in the future if respondent's` trap is maintained at its present location. Under the previous decisions of this court, appellant is therefore entitled to maintain this action to enjoin the maintenance of respondent's trap at its present location.

What may have been the policy or purpose of the legislature in requiring these passageways is immaterial. Appellant argues that, with reference to the waters of Baker's bay and the Columbia river, it was for the purpose of giving a greater number of fish an opportunity to escape the traps and proceed up the river to spawn, thereby perpetuating a greater number of fish for future years. The additional argument might be applied to Puget Sound, that the larger passageways there required were intended to serve the purposes of navigation. But whatever may have been the purpose was a matter of legislative policy, and the duty of the courts is to see that the requirements are observed.

The judgment is reversed, and the cause remanded, with instructions to vacate the judgment and enter an order sustaining the demurrer to the answer.

MOUNT, C. J., CROW, ROOT, and DUNBAR, JJ., concur.