[No. 2074. Decided February 7, 1896.]

ROBERT POLLOCK, *Guardian, Appellant,* v. ANDREW HORN, *et al., Respondents.*

INSANITY — LIABILITY OF INSANE SURETY — JUDGMENT — COLLATERAL ATTACK.

A judgment against an insane surety upon a forthcoming bond in attachment proceedings is not void, if the surety was not insane at the time the bond was given.

Questions as to irregularities in the proceedings in which a judgment is rendered against an insane person cannot be raised in a collateral attack.

The fact that the insanity of a judgment debtor had been established prior to the rendition of judgment against him, would not exempt his property from the operation of an execution flowing from a legal judgment, which had not been fraudulently or wrongfully obtained.

Appeal from Superior Court, Pierce County — Hon. JOHN C. STALLCUP, Judge. Affirmed.

*E. W. Taylor,* for appellant:

A judgment does not become a lien on the real estate of a person who has been adjudged incompetent and a guardian appointed to take charge of his estate. *Mason v. Denison,* 15 Wend. 64; *Tay v. Hawley,* 39 Cal.

93; *Mason v. Eldred*, 6 Wall. 231; Buswell, Insanity, § 400; 1 Warvelle, Vendors, pp. 83, 90; *Titman v. Riker*, 10 Atl. 397; *Wadsworth v. Sharpsteen*, 8 N. Y. 389 (59 Am. Dec. 499); *Wait v. Maxwell*, 5 Pick. 217 (16 Am. Dec. 391); *Hovey v. Hobson*, 53 Me. 451 (89 Am. Dec. 705).

The law having provided for the seizure of the person of an incompetent and the appointment of a guardian to manage his estate, creditors must submit their claims to the guardian and obtain satisfaction as comtemplated in ch. 15, title 12, Code of Procedure. *Dickerson v. Davis*, 12 N. E. 147; Buswell, Insanity, §§ 30–38; *Robertson v. Lain*, 19 Wend. 650; *Brasher v. Cortlandt*, 2 Johns. Ch. 401; *White v. Palmer*, 4 Mass. 147; *In re Heller*, 3 Paige, 199; *In re Hoag*, 7 Paige, 315; *In re Pettit*, 2 Paige, 596; *Bolling v. Turner*, 6 Rand. 584; *Wright's Appeal*, 8 Pa. St. 57; *Eckstein's Case*, 1 Pars. 59; Buswell, Insanity, §§ 135–138.

*A. C. Arntson*, and *R. F. Laffoon*, for respondents:

The court had jurisdiction to render judgment against William Pollock, though he was insane at the time. *Park v. Mighell*, 3 Wash. 737; Freeman, Judgements (3d ed.), §§ 142, 152, 126; *Johnson v. Pomeroy*, 31 Ohio St. 247; *Belles v. Miller*, 10 Wash. 259; *Gardner v. Mobile, etc., R. R. Co.*, 15 South. 271; Freeman, Executions, § 22.

The opinion of the court was delivered by

DUNBAR, J.— On the 19th day of November, 1890, in an attachment case of *Wandell v. Miller*, the latter furnished an undertaking signed by W. Pollock, the affidavit to the bond showing that the bondsman was William Pollock. In February, 1892, William Pollock was adjudged insane and committed to the Western

Washington hospital for the insane, and a guardian, Robert Pollock, was duly appointed. In the case of *Wandell v. Miller* the attachment was released and judgment was entered against Miller and his bondsmen, including William Pollock, on May 20, 1892. Execution was issued June 18, 1892. On September 10, 1892, the real estate in controversy, being the property of William Pollock, was sold. The sale was afterwards confirmed, and this action was brought in April, 1894, to set aside the sale and to have the judgment under which the sale was made declared null and void. The cause was tried by the court, who found in favor of the respondents, the defendants in the action, and dismissed plaintiff's action. From such judgment of dismissal this appeal is taken.

It is contended by the appellant that the judgment under which the property in question was sold was absolutely void for the reason that Pollock was insane at the time of the rendition of said judgment. This contention cannot be sustained under the authorities. There is no claim that he was insane at the time the bond was given. By giving the bond he subjected himself to the jurisdiction of the court, and we held in the case of *Park v. Mighell*, 3 Wash. 737 (29 Pac. 556), that the court had jurisdiction to render judgment against the surety on a forthcoming bond in an attachment proceeding without notice to such surety. It would not have been necessary, then, to have given Pollock notice had he remained sane, and the rule of law is in any event that a judgment is not void when taken against a lunatic. Whatever may be said of the justice or injustice of this rule, the rule itself is so well established by the authorities that it cannot be gainsaid.

In Freeman on Judgments (4th ed.), § 152, the author says:

"While an occasional difference of opinion manifests itself in regard to the propriety and possibility of binding *femes covert* and infants by judicial proceedings in which they were not represented by some competent authority, no such difference has been made apparent in relation to a more unfortunate and more defenseless class of persons; but by a concurrence of judicial authority lunatics are held to be within the jurisdiction of the courts. Judgments against them, it is said, are neither void nor voidable. . . . The proper remedy in favor of a lunatic being to apply to chancery to restrain proceedings, and to compel plaintiff to go there for justice. In a suit against a lunatic, the judgment is properly entered against him, and not against his guardian. A lunatic has capacity to appear in court by attorney. The legal title to his estate remains in him, and does not pass to his guardian." [Citing a great many cases to sustain the text.]

See, also, Freeman on Executions, § 22; *Withrow v. Smithson*, 37 W. Va. 757 (17 S. E. 316). In the last mentioned case, it was decided that a judgment against a person insane at its rendition is not for that cause void, and is a lien on land.

The judgment, therefore, not being void, and no appeal having been taken from it, mere questions of irregularity in the proceedings in that case cannot be raised in this collateral attack. *Belles v. Miller*, 10 Wash. 259 (38 Pac. 1050). Therefore, we shall not discuss the many errors assigned by the appellant, which go to the irregularities of the former case.

The question, however, which has given us more trouble, is whether or not this judgment, having been rendered subsequent to the establishment of William Pollock's insanity, would have the effect simply of establishing the claim of the judgment creditor to be

settled in due course of the administration of the estate, under ch. 15, title 12, of the Code of Procedure, entitled "Of the Guardianship of Idiots and Insane Persons." Section 1154 of that chapter provides that "the several superior courts shall have power to appoint guardians to take the care, custody and management of all idiots, insane persons, and all who are incapable of conducting their own affairs; and of their estates," etc. It is contended by the appellant that this act, and the succeeding section, would be meaningless if the estate of the ward could be sold on execution. But a perusal of the whole chapter, especially of § 1170, which seems to provide for the running of an execution against the property of a ward, leads us to conclude that it was not the intention of the legislature to exempt the property of a lunatic from the operations of an execution flowing from a legal judgment. It is not to be concluded that the lunatic or his estate is without remedy, but the remedy is an action in equity to set aside a judgment, if the judgment has been fraudulently obtained. If the judgment has not been fraudulently or wrongfully obtained, then no harm is worked upon him, and if it has, the courts will set it aside.

The complaint in this case failing to allege any fraud, and none appearing in the trial of the cause, we think the ruling of the court was correct, and the judgment will therefore be affirmed.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.