DAVID A. COLLIER, Appellant, v. J. G. SMALTZ and IOWA RAILROAD LAND COMPANY v. DAVID A. COLLIER and GEORGE B. SMYTH, Appellants.

**Mortgages:** DEFEASANCE: CONVEYANCE OF FEE. Where a husband and wife join in deeds conveying lands of the wife, and the grantee at the same time executes a defeasance in which it is recited that he holds the husband's obligation for a certain sum, and that upon payment of the same he will reconvey the land, the transaction constitutes a mortgage, differing however from the ordinary mortgage in that the fee in the land passes to the grantee.

**Same:** FORECLOSURE: EFFECT OF DECREE. Upon foreclosure of an absolute deed as a mortgage, by which a husband and wife conveyed lands of the wife to secure the husband's debt, a decree fixing the amount of indebtedness and directing a sale for its satisfaction does not operate to transfer the fee to the wife.

**Limitation of actions:** EXEMPTION IN FAVOR OF INSANE PERSONS. No exemption as to the time of bringing actions exists in favor of insane persons unless so provided by statute.

**Same:** STATUTES: CONSTRUCTION. The Act of the Thirty-first General Assembly relating to the limitation of actions affecting real property is a special statute additional to Chapter 2 of Title 18 of the Code, and stands alone; so that section 3453 extending the time for commencement of actions in favor of insane persons does not apply to cases within that Act.

**Same:** CONSTITUTIONAL LAW: DUE PROCESS. Even though the Act of the Thirty-first General Assembly referred to is construed as not subject to the provisions of the general statute of limitations extending the time for commencing actions in favor of insane persons, it is not unconstitutional as a· deprivation of property without due process of law; since, as in this case, the insane husband, whose wife was dead, might have maintained an action within four years prior to the passage of the Act in question, and for one year thereafter.

*Appeal from Plymouth District Court.*—HON. WILLIAM HUTCHINSON, Judge.

TUESDAY, NOVEMBER 15, 1910.

ON hearing, the petition in the first-entitled case was dismissed and decree entered as prayed in the last. The plaintiff· in the first and defendants in the last appeal.— *Affirmed.*

*F. T. Hughes, Jacob Sims,* and *H. S. Martin,* for appellants.

*Zink & Roseberry,* for appellee Smaltz.

*Charles A. Clark,* for appelee, Iowa Railroad Land Co.

LADD, J.—The two cases were tried together, but separate decrees were entered. They are submitted on the record so made. In one, David A. Collier v. J. G. Smaltz, the plaintiff, as grantee of George B. Smyth, prays that title to an undivided one-third interest in a section of land in Plymouth County be established in him for that, as is alleged, said Smyth never parted with his distributive share therein, the same having been owned by the wife of said Smyth, under whom through mesne conveyances the defendant Smaltz claims. In the other, the Iowa Railroad Land Company v. David A. Collier and George B. Smyth,

the plaintiff alleged that its grantor acquired title to about two hundred and forty acres of land in said county through mesne conveyances of Mrs. Smyth, who was owner of the land at one time; that the same was platted, and numerous lots sold and conveyed to divers persons; that the incorporated town of Kingsley is located thereon; that all the lots and lands undisposed of by said grantor were deeded to plaintiff in 1888, a part of the consideration being that plaintiff should be responsible for all liabilities of its grantor, and especially for any breaches of warranty in the conveyance of lots, and it prayed that title be quieted in plaintiff and its grantees and the grantees of its grantor, and for other appropriate relief. In a crossbill Collier asked relief such as is prayed in the first case. In both the main issue is whether George B. Smyth was entitled to maintain an action for his distributive share in these lands in January, 1908, when he executed deeds of conveyance thereof to the plaintiff. It appears that George B. and Martha M. Smyth were married in 1850. She acquired the lands in controversy and land in Humboldt and other counties from the Des Moines Valley Railroad Company January 31, 1874, and executed separate deeds for the land in each county, in which her husband joined, transferring the same to P. Thornton Lomax September 7th following, and these were duly recorded. At the same time Lomax executed a written defeasance reciting that he held the note of George B. Smyth & Co. for $12,000 payable with interest at the rate of ten percent per annum after four months from date to A. Hosmer, A. M. Moody and Lomax as executors of the estate of B. F. Moody, deceased, and stipulating that, in event of payment of principal, interest, and taxes within one year from maturity, Lomax would reconvey the land. Such payment was not made, and for this reason foreclosure proceedings were begun, and a decree of foreclosure entered December 18, 1877, in the district court in and for Humboldt County ordering the

sale of all the land for the satisfaction of the debt. See *Lomax v. Smyth,* 50 Iowa, 223. Thereafter, and on the 29th day of May, 1879, Lomax and Mrs. Smyth entered into a stipulation reciting facts as stated, and adding that, in consideration of the premises and the full satisfaction and discharge of the debt, interest, and costs in said decree provided, "the said party of the first part doth hereby, relinquish, release, bargain, sell, and convey" certain real estate described, including the lands in controversy. This instrument was not signed by George B. Smyth, but it was recorded in Plymouth County June 10, 1879. The defeasance was never recorded there, and no transcript of the foreclosure proceedings was ever filed there. The indebtedness was that of Smyth and with the interest and taxes amounted to $20,628.47 when Mrs. Smyth executed the release or deed last mentioned. Whether the lands were worth this or more does not appear. Mrs. Smyth died April 21, 1903. Her husband had been committed to the hospital for the insane at Mt. Pleasant February 1, 1888, and was discharged therefrom May 1, 1891. He was again committed to the hospital February 2, 1905, and paroled November 21, 1907, since which time he was in the keeping of his family until death.

From this recital of facts it is apparent that, as between the Smyths and Lomax, the deeds and defeasance constituted a mortgage differing from an ordinary mort-

1. MORTGAGES: defeasance: conveyance of fee.

gage, in that the fee passed to Lomax. *Lomax v. Smyth, supra. Burdick v. Wentworth,* 42 Iowa, 440; *Richards v. Crawford,* 50 Iowa, 494; *Haggerty v. Brower,* 105 Iowa, 395. Mrs. Smyth remained the equitable owner, and the effect of the decree entered in the suit of Lomax against the Smyths was to foreclose against her equitable interest in the property.

It did not purport to divest Lomax of the fee, nor to revest Mrs. Smyth therewith. It did fix the amount of

indebtedness and direct the sale of the property for its satisfaction, and there is no ground for

2. SAME: fore-
   closure: effect
   of decree.

the contention that this in effect transferred the fee to Mrs. Smyth. But the point is not material in our view of the case, for it is conceded that by the execution of the instrument in 1879 by Mrs. Smyth to Lomax, whether it be denominated a release or quitclaim deed, there was passed or released to him whatever interest she retained in the lands. See *Baxter v. Prichard,* 122 Iowa, 590.

For the purpose of this case, it may be conceded, without deciding, that the inchoate distributive share of her husband, George B. Smyth, was not divested by these transactions, and that he was entitled to assert the same upon the death of his wife April 21, 1903. No claim thereto in fact was asserted until April, 1908, and, though the briefs of counsel have taken a wide range, it will not be necessary to consider any of the questions argued other than the plea of the statute of limitations.

Chapter 152 of the act of the 31st General Assembly was approved March 23, 1906, and became effective July 4th following. It is entitled "An act providing limitations for the commencement of actions, relative to real property, additional to chapter two (2) title eighteen (18) of the Code," and section 1 thereof enacts that:

In all cases where the holder of the legal title to real estate situated within this state, prior to the first day of January, 1885, conveyed said real estate or any interest therein by deed, mortgage, or other conveyance, and the spouse failed to join therein, such spouse or the heirs at law, devisees, grantees, or assigns of such spouse shall be barred from recovery unless suit is brought therefor within one year after the taking effect of this act. But in case the right to such distributive share has not accrued by the death of the spouse making such conveyance, then the one not joining is hereby authorized to file in the recorder's office of the county where the land is situated, a notice

with affidavit, setting forth affiant's claim together with the facts upon which such claim rests, and the residence of such claimant; and if such notice is not filed within two years of the taking effect of this act, such claim shall be forever barred. Any action contemplated in this section may include lands situated in different counties, by giving notice thereof as provided by section thirty-five hundred and forty-four (3544) of the Code.

It will be noted that the facts recited bring the causes of action pleaded by Collier squarely within the terms of this statute. Appellants contend, however, that Smyth was insane at the time of his wife's death, and so continued until the time suits were begun, and for this reason the above statute was tolled. As to whether he was insane at the time of and for several years subsequent to his wife's death the evidence is in sharp conflict, but, conceding him to have been insane during this period, it does not follow that the statute was tolled by reason of such disability. The act contains no exemption in favor of insane persons, and it is elementary that, save when otherwise provided by the Legislature, no such exemption exists. *Vance v. Vance,* 108 U. S. 514 (2 Sup. Ct. 854, 27 L. Ed. 808); *Campbell v. Long,* 20 Iowa, 387; *Shorick v. Bruce,* 21 Iowa, 307.

*3. LIMITATION OF ACTIONS: exemption in favor of insane persons.*

It is argued, however, that, though the act specifies no exemptions owing to disabilities, it was so incorporated into the chapter mentioned that section 3453 became applicable thereto. That section provides that: "The times limited for actions herein, except those brought for penalties and forfeitures, shall be extended in favor of minors and insane persons, so that they shall have one year from and after the termination of such disability within which to commence said action." By its language this section is expressly limited to actions "herein;" that is, those mentioned in the chapter of which it forms a part. That chapter consists of section 3447 fixing

*4. SAME: statutes: construction.*

the periods of limitation in the several kinds of actions enumerated in eight subdivisions, sections 3448 and 3449 stating when certain actions accrue, section 3450 defining the commencement of an action, sections 3451, 3452, 3454, 3455, and 3458 with respect to computation and extension of time, and section 3456 concerning the revivor of a cause of action, and section 3457 permitting the interposition of an outlawed counterclaim under certain conditions. The subdivision 7 of section 3447 provides that actions must be "brought for the recovery of real property within ten years." The act of the Thirty-First General Assembly, it will be observed, does not purport to be an amendment to this subdivision or any section of the chapter, or, for that matter, of the chapter itself. It is "additional" thereto and special, in that it has no application other than to lands conveyed by "the holder of the legal title prior to Jan. 1, 1885, without the spouse joining therein." It is not then a general statute as are all the sections of that chapter. Moreover, the manifest design of its enactment was to cut off or to develop of record all claims to distributive shares in realty originating prior to the date fixed. It is well known that previous to the decision of this court in *Sawyer v. Biggart,* 114 Iowa, 489, many conveyances were executed by husbands, acting under powers of attorney from their wives, signing their wives' names, and one of the reasons for enacting this statute seems to have been to cut off claims which might otherwise arise from transactions conducted in the best of faith by all parties concerned therein. The relief provided could not have proven effective where the spouse not joining in the conveyance had become disabled, had the act been by way of an amendment to some section of or the chapter itself, for this would have rendered it subject to the exemptions of section 3453, and the period of limitation might have been as long as under existing statutes. For this reason doubtless

the act as well as its title related to "limitations additional to those in chapter 2," etc.

Now "to provide" signifies to make ready for future use, to supply, and "additional," according to Webster's Dictionary, means "added; supplemental; coming by way of addition." According to the title of the act, the "limitations for the commencement of the actions, relative to real property" are by way of addition to the chapter relating to limitations, and not by way of amendment thereto. Being additional and not by way of amendment, the editor of the Code Supplement very properly so indicated therein as directed by section 5 of the provisions relating to the supplement of 1907. As the act was additional to and not amendatory of chapter 2, title 18, Code, it did not become a part thereof, and the exemptions of section 3453 of the Code are not applicable thereto. The act was additional to the chapter (and the recital of that fact did not render it more so) as was chapter 25, Acts 22d General Assembly, providing that in all cases of personal injury resulting from defective streets or sidewalks (first section) "that in all cases of personal injury resulting from defective streets or sidewalks or from any cause originating in the neglect or failure of any municipal corporation or its officers to perform their duties in constructing or maintaining streets or sidewalks, no suit shall be brought against the corporation after six months from the time of the injury unless written notice specifying the place and circumstances of the injury shall have been served upon such municipal corporation within ninety days after the injury."

In *Morgan v. City of Des Moines,* 60 Fed. 208 (8 C. C. A. 569), the United States Circuit Court of Appeals of the Eighth Circuit held that the act applied to minors as well as adults. This was approved in *Roelefsen v. Pella,* 121 Iowa, 153, and in *Cushing v. City of Winterest,* 144 Iowa, 260, the provisions, though incorporated as a part

of section 4447 of the Code, were declared to be by way of exception thereto, and not subject to the exemptions of section 3453. See, also, *Swaney v. Gage Co.,* 64 Neb. 627 (90 N. W. 542); *Davidson v. City of Muskegon,* 111 Mich. 454 (69 N. W. 670). We are of opinion that, as the act under consideration was complete in itself and purported to be not an amendment, but an addition to existing statutes of limitation, it ran against all persons alike, and the exemptions of section 3453 ought not to be ingrafted thereon by the court.

It is argued as against this construction that, if so construed, the act must be regarded as unconstitutional, in that, because of the brevity of time within which to have begun actions, the litigant was denied due process of law. But for the enactment of this statute an action might have been maintained if begun at any time within ten years from the death of Mrs. Smyth in 1903, when the cause of action accrued. The statute of limitations began to run then. *McNeil v. Sigler,* 95 Iowa, 587. The only effect of section 3453 was to extend the period of limitations, when applicable, until one year after the disability shall be removed. The act under consideration was approved March 23, 1907, and went into effect July 4th following, so that an action for the recovery of any interest Smyth may have had in the property might have been maintained at any time within four years prior to the approval of the act and during a little more than fifteen months thereafter, or within one year from its taking effect. That this can not be regarded as an unreasonable period within which to exact the commencement of action has been determined in a recent decision of this court. *Wooster v. Bateman,* 126 Iowa, 552. Of course, the Legislature may not arbitrarily cut off the remedy, and thereby deprive a citizen of vested rights, but it may require that action for the protection of these be brought if at all within such

5. SAME: constitutional law: due process.

time as under all the circumstances affords a reasonable opportunity to assert them. That no exemptions are prescribed in such a statute is doubtless entitled to consideration, but it must not be overlooked that an insane person, if not so judicially declared, may maintain an action in court. 22 Cyc. 1222; *Mentz v. Beebe,* 95 Wis. 383 (70 N. W. 468, 60 Am. St. Rep. 120); *Speck v. Pullman Palace Car Co.,* 121 Ill. 33 (12 N. E. 214). And, if so judicially declared, an action may be prosecuted by guardian. *Tiffany v. Worthington,* 96 Iowa, 560. Though laboring under disability himself, such legislation proceeds on the theory that relatives or others cognizant of his condition will be likely to take such steps for his protection as he would have but for such disability. A somewhat diligent search has not discovered an authority declaring the period within which suit must have been brought so unreasonably short that it was said to deny the litigant fair opportunity of being heard. On the other hand, decisions are numerous upholding statutes fixing much briefer periods. See *Semer v. Auditor General,* 133 Mich. 569 (95 N. W. 734); *People v. Christian,* 144 Mich. 247 (107 N. W. 919); *Merchants' Bank v. Braithwaite,* 7 N. D. 358 (75 N. W. 248, 66 Am. St. Rep. 653); *Power v. Kitching,* 10 N. D. 254 (86 N. W. 738, 88 Am. St. Rep 691); *Terry v. Anderson,* 95 U. S. 628 (24 L. Ed. 365); *Mills v. Scott,* 99 U. S. 25 (25 L. Ed. 294); *Cameron v. Railway,* 69 Miss. 78 (10 South. 554); *Turner v. New York,* 168 U. S. 90 (18 Sup. Ct. 38, 42 L. Ed. 392). The act is not vulnerable to the criticism last urged, and, as we think, interposes an insurmountable obstacle to the consideration of the causes of action set up otherwise on their merits.

The decree in each case is *affirmed.*