[No. 24703. *En Banc.* March 7, 1934.]

CLARENCE E. AMES, *Respondent,* v. THE DEPARTMENT
OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General, Browder Brown, Assistant,*
and *Dorothee Scarbrough,* for appellant.

[1]Reported in 30 P. (2d) 239.

*John S. Lynch* and *John S. Lynch, Jr.,* for respondent.

*J. O. Davies, amicus curiae.*

TOLMAN, J.—Respondent, a workman engaged in extrahazardous employment, made a report of accidental injuries said to have been suffered on December 9, 1931. The report, dated December 31, 1931, was signed by the claimant at the Western State Hospital for the insane and so shows on its face.

An investigation was made by the department, and the report made by the investigator shows the claimant to have been violently insane as early as December 11, 1931, and that he was known to have been committed to the hospital and was there confined. Notwithstanding this knowledge, the department, on February 15, 1932, rejected the claim because of insufficient proof that an accident had occurred in the course of the employment. The usual notice of rejection was sent by mail to the claimant at his home address.

The record shows that the claimant was adjudged insane by the superior court of Thurston county on December 15, 1931, and committed to the hospital; that he was paroled on January 17, 1932; and discharged as recovered on October 3, 1932. No guardian was ever appointed for him. There seems to have been a subsequent request to reopen the case, but by whom the record does not show. The request to reopen was rejected on March 12, 1932.

On October 12, 1932, after the court which had committed him had adjudged him to be recovered and had restored his civil rights, the claimant employed an attorney, who filed a petition for a rehearing of the claim in which it was alleged:

"That while working at an extrahazardous industry, in the employ of the Olympia Veneer Company, a cor-

poration, of Olympia, Washington, on the 9th day of December, 1931, he sustained an injury to his back, kidney and the lower left ribs on the left side, caused by a 48 x 96 inch plank falling with him while working, and there is a record of said claim having heretofore been filed in said department. That said claim has been heretofore acted upon by the said department of labor and industries and was rejected on the 15th day of February, 1932, and although your claimant was afterward examined by Dr. Miller of the said department, who found evidence of an old fracture to the left rib about four inches from the vertebra, and estimated a disability of about four weeks therefrom, although stating that he could not tell when said injury occurred, the department, nevertheless, refused to reconsider his claim and notified the claimant on March 12th, 1932, that the action of the department on February 15, 1932, would stand. That during all of said time mentioned from December 15th, 1931, to October 3, 1932, your claimant was legally incapacitated from filing a valid claim, from presenting evidence to sustain said claim, and from availing himself of the legal requisites of appealing from the decision of the department in rejecting his claim on the grounds of 'not sufficient proof of an accident in the course of employment,' for the reason that claimant was adjudged by the superior court of Thurston county, on December 15, 1931, to be an insane person and was committed to the Western State Hospital, at Fort Steilacoom, Washington, from which he was not discharged as recovered, until October 3, 1932, and that during said time your petitioner never had a guardian appointed to conserve his estate and protect his legal rights and administer his estate.

"That 60 days have not passed since he was discharged by the superior court of Thurston county on the 6th day of October, 1932, as discharged as recovered from insanity and restored to all his legal rights as an elector of the state of Washington."

This petition was accompanied by supporting affidavits tending to show that an accident had occurred

in the course of the employment causing injuries as alleged.

The department promptly denied this petition upon the sole ground that the statute of limitations had run against the claim. Thereafter, the claimant attempted to file a new claim, which was likewise rejected. A petition for rehearing before the joint board was promptly filed, and as promptly denied on the same ground. Whereupon, an appeal was taken to the superior court, resulting in a judgment reversing the department and directing that a rehearing be had before the joint board.

Rem. Rev. Stat., § 7697, among other things, provides:

"Any claimant, employer or other person aggrieved by any such order, decision or award must, before he appeals to the courts, serve upon the director of labor and industries, by mail or personally, within sixty days from the day on which such copy of such order, decision or award was communicated to the applicant, an application for rehearing before the joint board of said department, . . ."

The trial court seems to have adopted the view that the general statute, Rem. Rev. Stat., § 169, modifies the statutory provision which we have just quoted.

Rem. Rev. Stat., § 169, reads:

"If a person entitled to bring an action mentioned in this chapter, except for a penalty or forfeiture, or against a sheriff or other officer, for an escape, be, at the time the cause of action accrued, either under the age of twenty-one years, or insane, or imprisoned on a criminal charge, or in execution under the sentence of a court for a term less than his natural life, the time of such disability shall not be a part of the time limited for the commencement of action."

This section, or something very similar, has been in effect since 1854, and we think it relates to causes

of action generally rather than to these special statutory proceedings, and that it is of value here only as showing the general policy of the state with reference to persons under disability.

The question here presented must, we think, rest upon broad equitable principles rather than upon the strict terms of any statute.

At common law, while a judgment might be taken against an insane person, yet equity would grant relief upon a sufficient showing that an injustice had been done; or, in other words, such a judgment was not void and could not be set aside upon collateral attack, but, upon a proper showing of a meritorious defense, equity would grant relief. *Pollock v. Horn,* 13 Wash. 626, 43 Pac. 885, 52 Am. St. 66; *Haines v. West,* 101 Texas 226, 105 S. W. 1118, 130 Am. St. 839; *Stigers v. Brent,* 50 Md. 214, 33 Am. Rep. 317.

The distinctions between actions at law and actions in equity have so far been abolished in this state as to permit of equitable defenses in law actions and, of course, the granting of equitable relief in actions at law. Certainly, the department, like the courts, must consider equitable rules in all proper cases.

The general policy of our laws is to protect those who are unable to protect themselves, and equitable doctrines grew naturally out of the humane desire to relieve under special circumstances from the harshness of strict legal rules. Our legislature has always been well advised of the uses and purposes of equity, and it would be abhorrent and contrary to established public policy to hold that the legislature intended by the limitations in the industrial insurance act to permit the department to deal *ex parte* with a workman's claim and deny his just rights unheard while he was known to be *non compos mentis.*

In enacting this statute, the legislature must have had in mind that equity would relieve in all proper cases from the hardships which otherwise would occur in enforcing the strict letter of the statute. We are convinced that the legislature never intended to deny this equitable right, and certainly, in the absence of a clear showing of a legislative intent to so deny equitable rights which existed at common law, we must hold that it has not done so.

We think the petition for rehearing, which is a direct attack upon the judgment denying the claim, together with its supporting affidavits, presented sufficient facts to warrant equitable relief. The petition shows that the department acted *ex parte* while the claimant was known to it to be insane. The claimant was in no condition to be heard or to give testimony. His supporting witnesses apparently were not discovered by the department, and hence the finding that there was a lack of proof is, in truth and in equity, unjustifiable. The character of the proof disclosed by the petition and supporting affidavits is such as is generally received and considered by the department to be sufficient.

We hold, therefore, that there was a sufficient showing to warrant relief on equitable grounds, and the judgment of the trial court is therefore affirmed.

BEALS, C. J., BLAKE, GERAGHTY, and HOLCOMB, JJ., concur.

MILLARD, J. (concurring)—I concur in the result of the opinion of Tolman, J. Some courts have held that, if a statute of limitations contains no exemption of insane persons, no exemption exists. Regardless of statute or the common law, that utterance is as unsound as the common-law rule—the rule in this country until a relatively recent date—that a corporation was

not liable for slander committed by its agent within the scope of the agent's employment.

This is not a case in which we are required, on the one hand, to do violence to our innate sense of what is just; or, on the other hand, to overcome an aversion to doing aught that savors of judicial legislation.

A judgment against a person who was declared of unsound mind and for whom a guardian had been appointed, if summons was not served upon the guardian of such insane person, would be set aside. An insane person who is a party to an action in the superior courts shall appear by guardian. If he has no guardian, or, in the opinion of the court, the guardian is an improper person, the court will appoint one to act as guardian ad litem; nor may one mentally incapacitated be bound by proceedings before a quasi-judicial tribunal or department. Otherwise, our boast that the law affords protection to infants and those mentally incapable of caring for themselves is an empty one. If one is, in fact, insane, limitation does not begin to run during such disability against his right to recover, the suspension of the statute not depending upon an adjudication of insanity.

The personal injury was suffered only two days prior to the confinement of claimant, as insane, in the state hospital for the insane. The insanity, in fact, existed at the time his cause of action accrued. The judgment should be affirmed.

MITCHELL, J. (dissenting)—I dissent from the views expressed in the decision. An injured workman, within the workmen's compensation act, has no right of action against his employer, but is entitled to compensation under and according to the terms of the act. As stated in the decision, Rem. Rev. Stat., § 7697, which is a part of the act, provides:

"Any claimant, employer or other person aggrieved by any such order, decision or award must, before he appeals to the courts, serve upon the director of labor and industries, by mail or personally, within sixty days from the day on which such copy of such order, decision or award was communicated to the applicant, an application for rehearing before the joint board of said department, . . ."

But for this provision in the act, a claimant could not appeal to the courts. Clearly, then, whether as a statute of limitation or condition precedent, a claimant must, within sixty days from the date of the objectionable order against him, apply for a rehearing before the joint board of the department before he can appeal to the courts. Admittedly, that was not done in this case, and I understand it to be declared by the decision that the legal effect of his failure, attributable to the insanity of the claimant, can and must be overcome or relieved against by the application of equitable principles in protection of an established public policy to the effect that the legislature never intended the legal effect of its express language. If this were a question of good morals, then, of course, there would be no dissension or disagreement, but the question presented is one of power in the court to entertain an appeal to the courts.

If the legislature had wanted or intended to exempt persons under disability of any sort from the force of the sixty-day limitation for appeal to the joint board, it could have easily said so; and, while the courts may declare a law to be unconstitutional for certain reasons, they do not have the power to make a law, nor to repeal, amend or modify an act of the legislature.

The courts, without disagreement, in my opinion, have passed on the question of exemptions in favor of persons under disability from the running of such

statutes, holding that such exemptions do not exist unless specially stated in the act.

In *Collier v. Smaltz,* 149 Iowa 230, 128 N. W. 396, Ann. Cas. 1912C, 1007, discussing the subject with reference to the statutory limitations for the commencement of actions concerning real estate, the court said:

"The act contains no exemption in favor of insane persons, and it is elementary that, save when otherwise provided by the Legislature, no such exemption exists. *Vance v. Vance,* 108 U. S. 514 (2 Sup. Ct. 854, 27 L. Ed. 808); *Campbell v. Long,* 20 Iowa 387; *Shorick v. Bruce,* 21 Iowa 307."

In *Alvarado v. Southern Pac. Co.,* 193 S. W. (Tex. Civ. App.) 1108, the claimant's suit arose under the Federal Employers' Liability Act. The decision, tersely stated in the syllabus, was as follows:

"Under federal Employers' Liability Act April 22, 1908, c. 149, § 6, 35 Stat. 66 (U. S. Comp. St. 1913, § 8662), providing that no action shall be maintained under the act unless commenced within 2 years from the day the cause of action accrued, there being no exception in the act extending the time within which suit may be brought by an employe in the event of his insanity, the courts are not at liberty to apply state statutes extending or tolling the time for filing a suit because of insanity, so that, where the injuries to a railroad employe engaged in interstate commerce rendered him insane, his cause of action accrued at the time of the injury, and a suit could not be maintained under the act by his next friend more than 2 years after the date of the injury."

37 C. J., Limitations of Actions, p. 1024, § 432, says:

"Limitations run against every one without regard to the personal disability of insanity, unless there is a saving of such cases in the statute."

Upon principle, this question has been decided by former cases of this court, to which the present decision, in my opinion, is contrary.

In *Born v. Spokane,* 27 Wash. 719, 68 Pac. 386, and *Ehrhardt v. Seattle,* 33 Wash. 664, 74 Pac. 827, both arising in cities of the first class, it was held that *charter provisions* requiring the filing of claims for damages within a specified time as a limitation upon or condition precedent to the right to sue, were excused by showing mental incapacity of the injured person running through the whole of such period. This, upon the manifest theory, later approved by this court, that such city cannot limit its liability by its own charter.

Thereafter, the *legislature* enacted a law (Laws 1909, p. 627, § 1), providing that:

"All claims for damages against any city or town of the *second, third or fourth* class must be presented to the city or town council and filed with the city or town clerk within thirty days after the time when such claim for damages accrued: . . ." Rem. Rev. Stat., § 9481. (Italics mine.)

The case of *Ransom v. South Bend,* 76 Wash. 396, 136 Pac. 365, arose under that act of 1909. In that case, the claim was filed seventy-three days after the accident happened, for which delay the excuse of physical and mental disability prior to the filing was alleged. The court held there was no exemption from the limitation contained in the statute, making a clear distinction between the binding force upon the courts of such a provision contained in an act of the legislature as distinguished from one found in the charter of a city. In the following quotation from the decision in that case, I take occasion to italicize certain language to more clearly show what I think to be its decisive and controlling effect upon the question in the present case, as follows:

"We have held that the thirty-day limitation in this *statute* is mandatory; that the statute is clear, definite,

and precise in its terms; that a compliance with its provisions is 'a condition precedent to the bringing of the action,' and that the giving of the notice 'in substantial compliance with the statute must be alleged and proven.' *Collins v. Spokane,* 64 Wash. 153, 116 Pac. 663, 35 L. R. A. (N. S.) 840; *Wolpers v. Spokane,* 66 Wash. 633, 120 Pac. 113; *Benson v. Hoquiam,* 67 Wash. 90, 121 Pac. 58. We have also held that physical or mental incapacity, running through the entire period fixed by a *city charter* for presenting claims against the city, excuses a compliance with the charter. *Born v. Spokane,* 27 Wash. 719, 68 Pac. 386; *Ehrhardt v. Seattle,* 33 Wash. 664, 74 Pac. 827.

''The appellant invites us to apply this rule of interpretation to the *statute. This we cannot do without trenching upon powers vested exclusively in a coordinate branch of the state government. When the lawmaking branch of the government has spoken, the courts may interpret, but cannot add to or take from, the clear and unambiguous meaning of the law. To do so would be legislation rather than interpretation.* The policy, expediency, and wisdom of a statute are legislative and not judicial questions. *Point Roberts Fishing Co. v. George & Barker Co.,* 28 Wash. 200, 68 Pac. 438.

''In *State v. Carey,* 4 Wash. 424, 30 Pac. 729, addressing itself to this question, the court said:

'' 'Yet, conceding the right of the legislature to legislate upon the subject, the wisdom of the act, its reasonableness or unreasonableness is a question for legislative discretion, and not for judicial determination. Judge Cooley says, in his work on Constitutional Limitations (5th ed., page 201): *''The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason and expediency with the lawmaking power.''* '

''Courts of other jurisdictions have construed similar statutes, varying slightly in phraseology, in harmony with our construction of this statute. *Schmidt v. Fremont,* 70 Neb. 577, 97 N. W. 830; *Ellis v. Kearney,* 80 Neb. 51, 113 N. W. 803; *McCollum v. South*

*Omaha,* 84 Neb. 413, 121 N. W. 438; *Touhey v. Decatur,* 175 Ind. 98, 93 N. E. 540, 32 L. R. A. (N. S.) 350; *Huntington v. Calais,* 105 Me. 144, 73 Atl. 829; *Daniels v. Racine,* 98 Wis. 649, 74 N. W. 553; *Hay v. Baraboo,* 127 Wis. 1, 105 N. W. 654, 115 Am. St. 977, 3 L. R. A. (N. S.) 84; *Crooker v. Hartford,* 66 Conn. 387, 34 Atl. 98; *Fort Worth v. Shero,* 16 Tex. Civ. App. 487, 41 S. W. 704; *Trost v. Casselton,* 8 N. D. 534, 79 N. W. 1071; *Gribben v. Franklin,* 175 Ind. 500, 94 N. E. 757.

"In the *Schmidt, McCollum* and *Ellis* cases, it was held .that incapacity, caused by the injury which formed the basis of the suit, did not excuse a failure to give the notice within the time prescribed by the statute. In *Davidson v. Muskegon,* 111 Mich. 454, 69 N. W. 670, and *Winter v. Niagara Falls,* 190 N. Y. 198, 82 N. E. 1101, 123 Am. St. 540, the same rule was applied to infants.. In *Morgan v. Des Moines,* 60 Fed. 208, the statute was held a bar to a suit by an infant four years of age who had not complied with the terms of the statute. In the *McCollum* case the court said:

" '*The effect of the holding is that the legislature may fix a limitation applicable to all, and that exceptions omitted from the statute do not exist.'*

"In the *Ellis* case, the same view is expressed in the following language: '*It is not the province of the courts to make the law, or read into it exceptions not intended by the lawmakers.'* In the *Schmidt* case, *the court observed that it had no power to 'engraft an exception upon it* [the statute] *by construction.'* "

That case was followed and the doctrine restated in *Haynes v. Seattle,* 83 Wash. 51, 145 Pac. 73, which arose in Seattle after the *legislature* of 1909, by Laws of 1909, chapter 83, p. 181, Rem. Rev. Stat., §§ 9478-9480, gave to this provision of the charters of *cities of the first class* the force and dignity of *an act of the legislature.*

The distinction between the two lines of cases, those falling under the statute and those covered by a city charter, is clearly pointed out in *Benson v. Hoquiam,*

67 Wash. 90, 121 Pac. 58, to the effect that the limitations arising under the *statute* are mandatory, while those under a *city charter* proceed upon the theory that a city cannot limit its liability by its own charter provision.

It will be kept in mind that the limitation of sixty days within which to apply for a rehearing before the joint board is not only a limitation but a condition precedent to an appeal to the courts, and that it is not a rule, order or resolution of any municipal corporation or board or commission, executive or administrative, but is an act of the legislature which contains no exception whatever, and is binding alike upon the department in its administration of the act and upon the courts with respect to appeals.

As I read the cases cited by the decision herein, they are not applicable to the present inquiry. They were ordinary actions growing out of private transactions, and involved no statute. *Pollock v. Horn,* 13 Wash. 626, 43 Pac. 885, 52 Am. St. 66, was a collateral attack on a judgment given against Pollock, while he was insane, on an attachment bond executed by him when he was sane. It was stated in the opinion, however:

"It is not to be concluded that the lunatic or his estate is without remedy, but the remedy is an action in equity to set aside a judgment, if the judgment has been *fraudulently obtained.*" (Italics mine.)

The result was:

"The complaint in this case failing to allege any fraud, and none appearing in the trial of the cause, . . . the judgment will therefore be affirmed."

In *Haines v. West,* 101 Tex. 226, 105 S. W. 1118, 130 Am. St. 839, it was held that a former judgment against Mrs. Haines, if rendered against her while insane, "was not void and would bind her in this suit."

In *Stigers v. Brent,* 50 Md. 214, 33 Am. Rep. 317, the decision was that lunacy was no sufficient ground, in equity, for declaring a judgment for a debt contracted during sanity, to be a nullity.

The present proceeding is a plain, straight appeal at law to the superior court, under the terms of the statute, from an administrative board which, according to the record, only complied with the mandatory terms of an act of the legislature against which there are no exemptions or exceptions in favor of the claimant. If it be true, as it must be admitted, that the legislature can provide procedure and rights with respect to the administration of this fund, it follows that neither the courts, sitting in equity or otherwise, nor the department can make any changes in such statutes because of what they may think to be deficiencies in the terms of the act, and, in my opinion, the courts are without jurisdiction in the premises.

MAIN and STEINERT, JJ., concur with MITCHELL, J.