Anna E. POWERS, Respondent,

v.

**STATE DEPARTMENT OF PUBLIC
HEALTH AND WELFARE,**
Appellant.

No. 23619.

Kansas City Court of Appeals.

Missouri.

June 4, 1962.

Rehearing Denied July 2, 1962.

Thomas F. Eagleton, Atty. Gen., Moody Mansur, Asst. Atty. Gen., Jefferson City, for appellant.

David R. Clevenger, William D. Lay, Platte City, Preston Forsee, Kansas City, for respondent.

HUNTER, Presiding Judge.

This is an appeal by the State Department of Public Health and Welfare from a judgment of the Circuit Court of Platte County, Missouri, holding that the decision of appellant's director was arbitrary and unreasonable in finding that respondent, Mrs. Anna E. Powers, owned real property not furnishing shelter for her which had a current market value of $750.00 or more and hence was properly removed from the old age assistance rolls.

The pertinent evidence essentially is neither controverted nor conflicting. Anna E. Powers is seventy years of age and an unemployed widow. Prior to 1948 she inherited from her mother a tract of land near Parkville, Missouri, containing 12 acres upon which was located the old family home. At the time of the hearing this house in which she lived was sixty-eight years old, dilapidated and without plumbing, running water or modern conveniences.

In 1948, Mrs. Powers' daughter, Dorothy, became engaged to Lloyd Murray. Dorothy had been living with her mother who wanted her to continue to live near her after the marriage so that they could take care of her, take her to the grocery store, to church and do other needed things for her.

Mrs. Powers testified that upon her daughter's marriage to Mr. Murray she made them a gift of one acre ("Murray Acre") of the mentioned 12 acres on their promise that they would build a house on it, near her home.[1] It is undisputed that in 1948 the Murrays immediately took possession of this one acre and built a house on it with money that Mr. Murray borrowed from his father who mortgaged his own home to obtain it, supplemented some by money Lloyd Murray had. Mrs. Powers

contributed no money or materials for this house and disclaimed any interest in it. The Murray home on the one acre tract is located about 200 feet from Mrs. Powers' home.

In 1949, about seven years before Mrs. Powers applied for old age assistance, she employed Mr. Willis, the Platte County surveyor, to survey the boundaries of the "Murray Acre". This survey is in evidence.

In 1955, upon attaining the required age of 65, Mrs. Powers applied for old age assistance. She testified that at that time she told Mrs. Younger, of the county welfare office, that she did not own the "Murray Acre" but that Lloyd and Dorothy Murray owned it. She stated she also told this to a Mrs. Listrom of that office.

In November, 1959, Lloyd tried to borrow some money on the "Murray Acre" house, and was unable to do so because Mrs. Powers had not given him a deed to the "Murray Acre". Lloyd and Dorothy then requested Mrs. Powers to furnish them with a deed to it and she did so. This deed was recorded on December 14, 1959.

This deed came to the attention of the county welfare office and on January 13, 1960, the county welfare director had Mrs. Powers in and discussed with her, her daughter, and her attorney, the effect of the deed on her old age assistance case. Mrs. Powers, her daughter, and her attorney, testified that the county director told them at that discussion that before Mrs. Powers could again be eligible for old age assistance the property would have to be transferred back to Mrs. Powers so she would be in the same status as prior to the transfer. The county director denied that this was what she told them and stated that what she said to them was, " * * * that before she

<hr/>

1. Ten witnesses appeared at the trial prepared to testify that Mrs. Powers gave the Murrays the one acre—called the "Murray Acre". That the Murrays paid for the construction of the house, and that Mrs. Powers did not make any financial

contribution toward the construction of the house. After hearing the testimony of two of them the appellant's referee declined to receive the testimony of the other eight on the ground such testimony would be cumulative.

(Mrs Powers) could ever be eligible again there would either be a period time consisting of five years, and I (county director) explained to you (Mrs. Power's attorney) she would have to remain in the same status as she was in prior to the transfer, which would in turn mean that the property would have to be transferred back to her. However, when that was done we discussed that the property would become an available resource."

Shortly thereafter and on February 9, 1960, the Murrays executed a deed on the "Murray Acre" to Mrs. Powers. After that deed was recorded the county director deemed the "Murray Acre" to be an available resource to Mrs. Powers which precluded her from eligibility to the old age assistance rolls. She was removed from the rolls on April 26, 1960, for this reason.

Appellant introduced into evidence at the hearing on December 13, 1960, its rule and regulation No. 13 which provides in part that when an applicant or recipient owns real estate which is not furnishing shelter and its current market value is $750 or more if the applicant or recipient is single, such property shall be considered as a resource which will render such person ineligible for public assistance.[2] Additionally, it was stipulated and agreed at the hearing by *appellant's referee* and respondent that the house on the one acre tract, "known as the Murray house, *was paid for by the Murrays, and we can also stipulate Mrs. Powers has an available resource consisting of cash value of insurance of $434.85."* (Emphasis ours.) It is also agreed by the parties that the one acre tract with the house on it was worth over $750.

Appellant's position and contention as expressed and given by appellant's state director as the controlling part of his decision and relied upon in appellant's brief is that "Claimant in 1948 attempted a gift of

the property but the gift was ineffective except as between the parties and third parties with knowledge because there was no legal transfer. * * * The Division of Welfare ascertains who are the record title owners of real estate in determining eligibility for public assistance, and neither the Division of Welfare nor the Department of Public Health and Welfare does not have equity jurisdiction to consider or adjudicate contractual rights or to declare title to real estate, and, therefore, we cannot determine that real estate belongs to someone not the legal record title holder. * * * To determine title or ownership of land such question must be settled by a court of competent jurisdiction in a direct proceeding to determine such title. Considering the above * * * it ("Murray Acre" with house on it) must be considered as a resource and, therefore, claimant is ineligible to receive Old Age Assistance benefits at this time."

In his oral argument before this court appellant's counsel advised the court that "it is the policy of the director not to even consider evidence of any equitable interest but to consider only record title" in determining a claimant's resources which affect his eligibility for public assistance.

■ On an appeal involving the decision of the director of public health and welfare the authority of this court, as that of the circuit court, is limited to a determination from the record of the hearing whether a fair hearing was granted and whether the decision made by the director was arbitrary and unreasonable. Section 208.100(4), (5) RSMo. 1959, V.A.M.S.; Ellis v. State Department of Public Health and Welfare, 365 Mo.Sup. 614, 285 S.W.2d 634; Collins v. Division of Welfare, 364 Mo.Sup. 1032, 270 S.W.2d 817.

■ The division of welfare through its director by statutory authority acts in a quasi-judicial capacity in conducting hear-

2. This regulation, appellant says, is authorized by Section 208.010 RSMo 1959, V.A.M.S. providing that benefits shall not be payable to a person who " * * * has

earning capacity, income or resources * * * sufficient to meet his needs for a reasonable subsistence compatible with decency and health."

ings and determining eligibility for public assistance. Section 208.010 RSMo. 1959, V.A.M.S. provides in part, "In determining the eligibility of an applicant for public assistance under this law, it *shall be the duty of the division of welfare to consider and take into account all facts and circumstances* surrounding the applicant, including his earning capacity, income and resources, from whatever source received, and if from *all the facts and circumstances* the applicant is not found to be in need, assistance shall be denied." (Emphasis ours.)

Section 208.080(3) RSMo. 1959, V.A.M.S. provides, "The director of the department of public health and welfare shall give * * * a fair hearing * * *. Every applicant * * * shall be entitled to be present, in person and by attorney, at the hearing, and shall be entitled to introduce into the record at said hearing *any and all evidence,* by witnesses or otherwise, *pertinent to such applicant's eligibility,* and *all such evidence* shall be taken down, preserved and *shall become a part of the applicant's record* in said case, *and upon the record so made* the director of the department of public health and welfare *shall determine all questions presented* by the appeal." (Emphasis ours.)

Section 208.100 RSMo. 1959, V.A.M.S. provides in part, that on appeal, "If the court shall decide for any reason that a fair hearing and determination of the applicant's eligibility and rights under this law was not granted the individual by said director, or that his decision was arbitrary and unreasonable, the court in such event shall remand the proceedings for redetermination of the issues by said director."

■ We have concluded that in the light of these statutes the director has failed to grant Mrs. Powers a fair hearing. The determinative question in this case concededly is whether Mrs. Powers has real estate assets (other than the home in which she lives) exceeding $750 in value. If so, she is not eligible. If not, she is eligible. This in turn requires the director to decide whether in actual fact she or the Murrays own the "Murray Acre" and the house on it, for it is admitted that the "Murray Acre" without the house is of no consequential value. As appellant stated in its brief the controlling question is "if the house built by the Murrays on respondents' land now belongs to the respondent then respondent does own real estate which renders her ineligible for public assistance under rule and regulation No. 13. On the other hand, if the Murrays are found to be the owners of the house separate and apart from the land on which it is situated (or if respondent does not own the land or the house) then respondent does not own real estate which would render her ineligible under Rule and Regulation No. 13."

In making this determination we conceive it to be the duty of the director "to consider and take into account all facts and circumstances" pertinent to the applicant's eligibility and to decide all questions inherent in determining the applicant's eligibility. We think the mentioned statutes call for no less, and that any other approach to the decision the director must make would be unrealistic, would permit uncontemplated injustices to occur, and not be what the legislature intended by these statutes.

In so saying we fully recognize the right of the director to judge the credibility of any witness, and after consideration, to disbelieve the testimony of such witness. The right of the director to determine credibility is not involved in this case for the director has made it clear that he did not undertake to consider or to pass on the credibility of all the evidence pertaining to ownership of the "Murray Acre" but rather restricted his consideration to who was the "record title holder" as shown by the county recorder's records, and that he refused to consider any other evidence for the assigned reason that a consideration of such other evidence would involve the application of equitable principles and equitable rules.

Our old age benefit statutes prescribe many eligibility requirements that must be

met in order for a senior citizen to be entitled either to get on, or to remain on, the eligible list. If in determining whether such requirements have been met the director in blanket manner refuses to consider and to apply established principles of law because he deems them to involve equitable considerations and refuses to consider otherwise pertinent evidence for the same reason, then we are constrained to rule that a fair hearing has not been accorded. A fair hearing contemplates more than a mere going through the ritual of permitting a claimant to be present with counsel at the hearing and to be accorded the opportunity of presenting evidence. According a fair hearing includes a proper consideration of all of the pertinent evidence rather than a refusal to consider any evidence that might call for the application of established equitable principles and rules.

For literally centuries the courts have applied equitable principles to avoid the often overly harsh, technical common law. Old distinctions between equitable and legal forms of action long ago were abolished in favor of a single form of action permitting the courts to reach a just result by the application of both legal or equitable rules as necessary to fairly decide all the questions presented by the facts. It is recognized that in no other manner could justice in the particular case be obtained. It is just as important that justice be obtained in an administrative proceeding as in a court. Our legislature is fully aware of all this. In establishing appellant department and giving it quasi-judicial authority to conduct hearings to determine eligibility for old age assistance it nowhere has indicated that appellant department in dealing with the poor of this state should limit such hearings by refusing to look to or consider any facts that might call for the application of established equitable principles of jurisprudence. Appellant is unable to cite any authority to sustain such contention as it makes, and we deem it to be without merit. Cf. Ames v. Department of Labor & Industries, 176 Wash. 509, 30 P.2d 239, 91 A.L.R. 1392.

Appellant suggests if evidence other than that of "record title" must be considered "it would make it almost impossible to honestly and effectively administer the program." We think the right of the director to weigh the evidence and to determine the credibility of the witnesses is an effective safeguard against possible fraud or dishonesty, and none such has been suggested in this case.

█ It is noteworthy that after appellant's director ruled against Mrs. Powers she brought suit in the circuit court against the Murrays to have the mentioned deed of December, 1959, from the Murrays to her cancelled and voided. Apparently on the evidence she presented here and which evidence the director refused to consider she obtained a judgment setting aside and voiding that deed. Over objection the circuit judge permitted that judgment to be introduced in evidence at the circuit court hearing and to be made a part of the transcript on appeal. Section 208.100(4) RSMo. 1959, V.A.M.S. provides that the appeal to the circuit court shall be tried and the cause determined upon the record of the proceedings had before and certified by the director. There is no provision for the taking of additional evidence before the circuit court. It was error for the trial court to admit or consider any evidence in the course of the submission on appeal other than the record as certified by the director. Johns v. State Social Security Commission, 235 Mo.App. 150, 143 S.W.2d 161.

On our review we have not considered this evidence not contained in the record of the proceedings certified by the director. On a redetermination of the issues on the remand of this cause to the director respondent will have ample opportunity to offer such evidence and to have it made a part of the transcript certified by the director in the event of further appeal. We do not now pass on the possible effect of such evidence.

For the reasons stated, the judgment of the circuit court reversing this cause and

remanding the proceedings for redetermination of the issues by the director is affirmed.

All concur.

## ON MOTION FOR REHEARING:

### PER CURIAM.

In its motion for rehearing appellant misconceives the effect of our opinion, contending it requires appellant in conducting hearings in public assistance cases to exercise equity jurisdiction belonging only to a court by *establishing and enforcing* a trust or by determining contractual or property rights *as between individuals.*

The legislature by statute, Section 208.010 RSMo. 1959, V.A.M.S., has clearly stated what appellant is to do, i. e., determine "the eligibility of a claimant for public assistance", and states that "In determining the eligibility of a claimant for public assistance under this law, it shall be the duty of the division of welfare to consider and take into account all facts and circumstances surrounding the claimant, including his living conditions, earning capacity, income and resources * * *."

■ Of course appellant cannot undertake to enter a judgment or decree as a court, determining who owns a piece of land, which judgment or decree would be binding on not only the claimant for public assistance but on others who might claim an interest in the land. This is true whether the issue of title or "resources" turns on evidence of "record title", legal rules or equitable rules.

Yet appellant can and daily does determine as between appellant and a claimant the question of his eligibility for public assistance. In making such a determination appellant does have to make incidental determinations concerning a claimant's "earning capacity, income and resources" in order to determine the ultimate fact of his eligibility or lack of eligibility for public assistance. These incidental determinations of resources and income have no legal effect on anyone other than the claimant *in his claim for public assistance,* and then only as an incidental determination or consideration of "facts and circumstances surrounding claimant" pertinent to his economic status.

■ As the statute declares, appellant must "consider and take into account all facts and circumstances", and not deliberately limit itself to a consideration of only those facts or circumstances which it believes involve the application of "legal rules" as contrasted with "equitable rules". If a claimant did not have "legal" or "record" title but was the beneficial owner of valuable property his beneficial interest is a pertinent fact and circumstance bearing on his eligibility. As stated in 81 C.J.S. Social Security and Public Welfare § 18, page 44: "* * * the word 'resources' has been held to mean any property which the applicant owns legally *or beneficially."* (Emphasis ours.) Thus equitable rules are applied in determining a claimant is not eligible because he is the beneficial owner of resources in excess of the minimum permitted. Equitable rules are equally applicable in determining a claimant is eligible for public assistance. See, 42 Am.Jur., Public Administrative Law, Section 58, page 365; Red Rover Copper Co. v. Industrial Commission, 58 Ariz. 203, 118 P.2d 1102, 137 A.L.R. 740; Ames v. Dept. of Labor and Industries, 176 Wash. 509, 30 P.2d 231, 91 A.L.R. 1392.

■ Appellant also contends this applicant (and presumably all applicants for public assistance with a similar problem) should first engage in litigation in the circuit courts to establish any pertinent fact concerning his economic status that might involve "equitable" considerations and to there disavow and disclaim any interest in income or resources that an application of purely legal as opposed to equitable rules might show belong to him, including obtaining a court order setting aside any instrument of record such as that here involved.

We do not find anything in the statute suggesting or requiring that a claimant for public assistance, presumably a poor person in advanced years, must first go to the expense and delay involved in employing legal counsel and engaging in litigation, requiring possibly more than one lawsuit, to establish "facts and circumstances surrounding the applicant, including his earning capacity, income and resources" (his economic situation). On the contrary the legislature throughout the entire act has evidenced regard for our elderly poor and obviously intended to establish a complete, inexpensive, and reasonably quick procedure for determining an applicant's eligibility for public assistance. This it did when it gave appellant authority to hear and determine from all the facts the question of eligibility for public assistance. It amply protected the public's interest by also giving appellant the right to weigh the evidence and to determine the credibility of witnesses.